UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS ROMERO BURNETT,<br>Plaintiff,<br>v.<br>DEBBIE ASUNCION,<br>Defendant. | Case No. 18-cv-03243-JD<br><br>**ORDER RE PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 1 |

Petitioner Carlos Romero Burnett is a California state prisoner who seeks federal habeas relief under 28 U.S.C. § 2254. Dkt. No. 1. He was convicted of possessing a weapon in custody while serving a prior life sentence for murder. Because of strikes under California law for previous convictions, he was sentenced to 25 years to life in prison to be served consecutively to the life sentence.

In the petition, Burnett raises the single claim that he was convicted in violation of his right to self-representation under the Sixth Amendment as interpreted in *Faretta v. California*, 422 U.S. 806 (1975). On appeal, the California Court of Appeal rejected this argument and affirmed the conviction.

There is no doubt that Burnett was at times a fractious defendant who posed some challenges to the trial court. He cycled through a few attorneys who he believed were not adequately representing him, and made unrealistic demands for discovery. But the record shows that Burnett made a clear, unequivocal and timely assertion of his right to self-representation three months before trial. The trial court was wrong to deny the request, and the affirmance by the court of appeal was contrary to clearly established federal law as determined by the Supreme Court of the United States. Consequently, the petition is granted and the matter is remanded for further proceedings consistent with this order.

**BACKGROUND**

The record, which the court of appeal summarized in *People v. Burnett*, No. H042861, 2017 WL 25499 (Cal. Ct. App. Jan. 3, 2017), *reh'g denied* (Jan. 24, 2017), *review denied* (Mar. 22, 2017) (unpublished), Dkt. No. 11, Ex. 6, is straightforward and undisputed by the parties. Burnett is serving a life sentence at Salinas Valley State Prison for first-degree murder and attempted murder. In August 2011, he was caught trying to enter another unit at the prison with an "inmate-manufactured weapon" consisting of a "three-inch long hard piece of plastic with a sharp point." *Id.* at *1. Burnett admitted possessing the plastic object but claimed that "he intended to use it as a screwdriver" in the course of his prison job doing janitorial and maintenance work. *Id.*

Burnett was charged by an information with possession of a weapon in a penal institution under California Penal Code Section 4502(a). The information also alleged that Burnett's prior convictions for murder and attempted murder qualified as "two strikes" under California Penal Code Section 1170.12(c)(2).

Burnett made an initial appearance in the trial court on May 22, 2012, with appointed counsel. About one week after that, on May 30, 2012, Burnett asked for a new lawyer on the grounds that the appointed one had not advised him correctly about his potentially long sentence in light of the two strikes. The trial court denied the request.

In December 2012, Burnett again asked for a new lawyer based on his dissatisfaction with the preparation of his defense. This request was denied and the case was called for trial on July 29, 2013. On that date, Burnett made a motion to represent himself. The trial court granted this motion, and terminated his lawyer's services.

Burnett, who was now acting pro se, filed a flurry of discovery and other motions, which were largely denied. In the course of a trial setting conference on November 6, 2013, Burnett said he no longer wanted to represent himself and asked for a new lawyer. The trial court granted the request and appointed counsel.

At a further trial setting conference on January 8, 2014, Burnett again asked to proceed on his own without an attorney. Burnett said his appointed lawyer had not been in touch with him for

two months and that Burnett did not know what the lawyer had planned for his defense. Hearing Transcript, Dkt. No. 11-3 at 302:16-20. The trial court asked if he wanted a new lawyer. Burnett said, "No. I want to represent myself." *Id*. at 302:27. The trial court pointed out that he tried that before and then withdrew the request. Burnett said he had withdrawn it because an investigator working on his case had urged him to "drop your pro per so there can be a proper mental capacity defense." *Id*. at 303:14-16. It appears that Burnett initially followed this advice but later changed his mind. *Id*. In any event, the transcript indicates that Burnett's main concern was dissatisfaction with his appointed attorneys.

The trial court had a detailed exchange with Burnett about self-representation. The court highlighted the risks of proceeding without an attorney, the disadvantages Burnett would face in court against a seasoned prosecutor, the fact that Burnett would not get any indulgences or coaching from the court because he was pro se, and that self-representation was, overall, a bad idea. *See generally* Dkt. No. 11-3. The trial court repeatedly tested Burnett's understanding of these and similar dangers, and his commitment to stick with self-representation. Burnett acknowledged all of the potential downsides identified by the court, and clearly and consistently expressed his desire to represent himself because he had no confidence in the lawyers assigned to defend him. Throughout the colloquy, Burnett articulated his lack of confidence in the appointed lawyers and said "I want to represent myself" (*id*. at 302:27), "I'm not saying it's going to be easy, but I'd rather -- I could trust myself" (*id*. at 305:26-27), "I need effective counsel. I need somebody who is going to fight for me" (*id*. at 315:4-5), and "I'd rather trust myself. I don't want to be in limbo" (*id*. at 305:2-3).

The trial court denied the request. It expressed concern that Burnett was "gaming the system" and "playing this Court." *Id*. at 314:7-16. The court asked Burnett if he could "announce ready for trial in three months." *Id*. at 315:21-22. Burnett said he could not because he wanted an investigator to pursue some "evidence," among other steps. *Id*. at 315:23-316:2. The trial court said that Burnett was "purposely trying to essentially make a mockery of the judicial process in this case" and was "not seeking to represent himself[,] to actually represent himself, but merely to delay the process." *Id*. at 316:38-317:11. The trial court did not relieve Burnett's attorney of

3

further representation after denying the *Faretta* request.

The trial was continued from April 7 to April 23, 2014, at which time Burnett made a motion for new counsel. *Burnett*, 2017 WL 25499, at *3. The motion was denied. *Id*. For reasons not identified by the court of appeal and not readily apparent from the record, Burnett's trial did not start until June 15, 2015. *Id*. As these undisputed facts establish, Burnett made his *Faretta* request just over 15 weeks before the April 23 trial date, and approximately 75 weeks -- or 17 months -- before his trial actually took place in June 2015.

Burnett raised the *Faretta* issue in his direct appeal of the conviction. In a short discussion based almost entirely on state court decisions, the court of appeal determined that "the trial court did not abuse its discretion in denying defendant's *Faretta* motion on grounds that it was brought for purposes of delay." *Id*. at *4. The California Supreme Court summarily denied Burnett's petition for review. Dkt. No. 11, Ex. 8.

**LEGAL STANDARDS**

When a state court decides a claim on the merits, habeas relief can be granted only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2); *see also Martinez v. Sullivan*, No. 17-CV-04436-JD, 2019 WL 1877347, at *2 (N.D. Cal. Apr. 26, 2019). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the

4

prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). The Court presumes the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court that considered the petitioner's claims, the Court looks to the last reasoned opinion from a lower court. *See Nunnemaker*, 501 U.S. at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). In this case, the Court looks to the decision by the court of appeal in resolving the habeas petition.

**DISCUSSION**

In *Faretta*, a case that also originated in California Superior Court, the United States Supreme Court held that the Sixth Amendment guarantees criminal defendants the right to represent themselves. The facts that led to this holding are strikingly similar to the ones here. Defendant Faretta had an appointed public defender who he thought was not doing a good job representing him. 422 U.S. at 807. He asked for a lawyer other than a public defender on several occasions. *Id*. at 810 n.5. "Weeks before trial," Faretta told the court he wanted to represent himself and did not want a lawyer. *Id*. at 836. The trial court initially granted Faretta's request to represent himself, but later terminated his pro se status and allowed his defense to be put on at trial only through a public defender. *Id*. at 808-10.

The Supreme Court found that this violated Faretta's right to represent himself. It held that the California court had unconstitutionally deprived Faretta of the right to conduct his own defense after he had declared his intention well before the trial started, was "aware of the dangers and disadvantages of self-representation," and the record established that "'he knows what he's doing and his choice is made with eyes open.'" *Id*. at 835-36 (internal citation omitted).

So too here. The parties debate the appropriate standard of review but the Court need not reach the issue because even under a deferential standard, there is no doubt that the court of appeal decided the Sixth Amendment and self-representation question differently than the Supreme Court did on materially indistinguishable facts. Nothing meaningfully differentiates this case from the circumstances in *Faretta*, and yet the court of appeal reached the opposite outcome to deprive Burnett of his Sixth Amendment rights. That result cannot be countenanced under any standard of review, whether de novo or deferential. *See Tamplin v. Muniz*, 894 F.3d 1076, 1087 (9th Cir. 2018).[1]

*Faretta* also establishes that Burnett's request was not untimely. As in *Faretta*, Burnett clearly expressed his intention of self-representation "weeks before" his trial -- at least 15 weeks before, and arguably 75 weeks taking into account the June 2015 trial date. Under either measure, Burnett amply satisfied the condition of timeliness under *Faretta's* "weeks before" standard. Our circuit has said as much in similar circumstances. *See Tamplin*, 894 F.3d at 1089 (*Faretta* request two weeks before trial is timely); *Burton v. Davis*, 816 F.3d 1132, 1141 (9th Cir. 2016). These cases show that Burnett's declaration was timely under clearly established Supreme Court precedent. *See Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

In addition, the record is devoid of evidence indicating that Burnett made the *Faretta* request solely or even primarily to cause delay. The fact that he made the request at least three months before trial makes it objectively unreasonable to presume or infer that he acted with the

---

[1] The state says a deferential standard is warranted because Burnett's request was equivocal. Dkt. No. 10-1 at 8. But the court of appeal did not clearly address that issue, and the fact that Burnett cycled through a few lawyers does not make a self-representation request equivocal under *Faretta*. *See Tamplin*, 894 F.3d at 1084. In any event, the outcome here would not change under the standard the state proposes.

6

goal of causing delay. This is all the more true since his trial did not actually happen until June 2015, 17 months later. And while Burnett said at the January hearing that he could not "announce ready" at that moment for trial in April, Dkt. No. 11-3 at 315:21-23, he also acknowledged and accepted the trial court's statement that he would not get any extra time beyond the usual for trial preparation, *id*. at 311:6-9. The discovery requests that Burnett mentioned are of no moment. There was plenty of time in the three months between Burnett's assertion of self-representation and an April trial date to handle any lingering discovery issues, particularly since the facts underlying the weapon possession charge were almost certainly quite straightforward and not subject to extensive pre-trial proceedings.

## CONCLUSION

The petition is granted. The state at its option may seek a new trial by October 7, 2019. If the state declines to pursue a new trial or fails to meet that deadline, Burnett is ordered to be released immediately upon the termination of his current term of custody for the prior convictions.

**IT IS SO ORDERED.**

Dated: August 27, 2019

JAMES DONATO
United States District Judge